UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:05CV-174-R

DAVID V. OAKES                                                                                 PLAINTIFF

v.

ALLSTATE INSURANCE COMPANY                                    DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant Allstate Insurance Company's Motion for Judgment on the Pleadings or for Summary Judgment (Docket #59). The Plaintiff responded (Docket #60) and the Defendant replied (Docket #61). This matter is ripe for adjudication. For the following reasons, the Defendant's Motion is **DENIED in part** and **GRANTED in part**.

**BACKGROUND**

The Plaintiff David Oakes ("Oakes") was injured in an automobile accident with Patrick Hook on September 6, 2002. On August 31, 2004, Oakes filed suit against Hook and Allstate Insurance Company ("Allstate"), the insurer of Oakes' vehicle involved in the accident. Oakes settled all claims against Hook and Hook's insurer.

Oakes' policy with Allstate included underinsured motorist (UIM) coverage as well as Personal Injury Protection (PIP) coverage, Added Reparations Benefits (ARB) coverage and Medical Payment (Medpay) coverage. In his original complaint, Oakes set forth three counts, the first pertaining only to Hook. Count II alleged: (1) in ¶ 4, that under KRS 304.39-010 et seq., Oakes is entitled to recover monetary compensation for lost earnings under the PIP, ARB, and Medpay coverages in his insurance policy; and (2) in ¶¶5-6, that Allstate's denial of the compensation demanded in ¶ 4 was in bad faith under the Unfair Claims Settlement Practices

Act (UCSPA), KRS 304.12-230. Count III alleged that Oakes is entitled to recover monetary compensation for the UIM coverage in his insurance policy, as Hook was an "Underinsured Motorist" as set forth in KRS 304.39-320.

On June 13, 2006, the Court granted Allstate's motion to bifurcate Oakes' bad faith claims from his underlying claims against Allstate for monetary compensation under the coverages in his insurance policy and hold those claims in abeyance pending the resolution of the underlying claims.

On February 26, 2007, the parties participated in a settlement conference and reached a settlement as to some of Oakes' claims. According to the terms of the Settlement Agreement, Allstate agreed to pay Oakes $205,000.00. Oakes agreed to dismiss his claims for compensation of his UIM claim, with prejudice, and his PIP, ARB and Medpay claims, without prejudice. The Agreement states: "The only remaining claim against the Defendant Allstate is the bad faith claim set forth in Count II of the Complaint."

On September 13, 2007, the Court granted leave for Oakes to file an Amended Complaint "to assert a statutory bad faith and related claims against Allstate's handling of plaintiff's claim for underinsured motorists benefits" (Docket #62). At this point, Allstate had already filed an Answer to the Amended Complaint and the instant motion was ripe, as Oakes had attached a copy of the Amended Complaint to his Motion to Amend/Correct the Complaint.

The Amended Complaint alleges: (1) Allstate handled Oakes' UIM claim in bad faith by refusing to pay a reasonable sum for the UIM benefits in a timely manner (¶¶ 3-8); (2) Allstate violated the UCSPA both by unfairly or deceptively selling him an insurance policy under the representation that Allstate would act in good faith and treat him fairly and by paying less than

the industry average on UIM and bodily injury claims (¶¶19-20); and (3) Allstate violated the Consumer Protection Act and treated him unfairly by giving him an offer that would be unacceptable to any reasonable person (¶ 21).  The Amended Complaint also seeks to recover punitive damages (¶ 17), which were not requested in the original complaint.

### STANDARD

**1. Judgment on the Pleadings**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) may be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).  For the purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).  In reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether" the moving party can prove no set of facts in support of its claim that would entitle it to relief.  *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

**2. Summary Judgment**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary

judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

**1. Bad faith under the Unfair Claims Settlement Practices Act**

In Count II of his original complaint, Oakes alleges that Allstate violated the UCSPA by failing to in good faith timely pay his claims under the PIP, ARB, and Medpay coverages in his policy (his Motor Vehicle Reparations Act (MVRA), KRS § 304.39-010 *et seq.*, claims). The settlement agreement executed between Oakes and Allstate clearly states: "The only claim remaining against the Defendant Allstate is the bad faith claim set forth in Count II of the Complaint." Oakes reasserted bad faith claims under the UCSPA in his Amended Complaint.

Both parties agree that Kentucky law does not recognize a cause of action under the UCSPA for the bad faith handling of the no-fault reparations benefits at issue here. This is because the MVRA "provides an exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits." *Foster v. Ky. Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006). The principal behind this has its source in *Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985), where the Kentucky Supreme Court held "where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* at 401.

This principle has also been followed in the federal courts. *See Korthals v. Grange Ins.*, 2006 U.S. Dist. LEXIS 82857 (W.D. Ky. Nov. 9, 2006). In *Couch v. Northland Ins. Co.*, 2007 U.S. Dist. LEXIS 39702 (E.D. Ky. May 31, 2007), the court was faced with a plaintiff's claim against an insurer for punitive damages under the UCSPA because the insurer failed to negotiate the plaintiff's MVRA claim in good faith. *Id.* at *9. The court was forced to grant summary judgment to the insurer because "[w]here an insurance claim results from an automobile accident, the 'Kentucky MVRA preempts general insurance law … and establishes remedies for violations of the [MVRA] statute.'" *Id.* at *10 (quoting *Foster*, 189 S.W.3d at 557). The "MVRA is a comprehensive act which not only relates to certain tort remedies, but also establishes the terms under which insurers pay no-fault benefits, and provides for the penalties to which insurers are subjected if they fail to properly pay no-fault benefits." *Id.* (quoting *Foster*, 189 S.W.3d at 557).

Thus, in Kentucky, a plaintiff alleging bad faith on the part of the insurance carrier regarding the late payment of basic reparation benefits cannot bring a private cause of action for

bad faith under the UCSPA.  *Id.*  at *12 (discussing *Hartley v. Geico Casualty Co.*, 2006 WL 2786929, at *1 (Ky. Ct. App. Sept. 29, 2006)).  Therefore, Oakes' bad faith claims under the UCSPA must be **DISMISSED**.

## 2. Underinsured Motorist Claim

In his Amended Complaint, Oakes alleges that Allstate did not in good faith handle his UIM claim because it refused to pay a him reasonable sum for the UIM coverage in his policy in a timely manner.  Allstate argues this claim must be dismissed because Oakes has already settled and released his UIM claim.  Allstate posits two justifications for its argument: (1) the Settlement Agreement clearly states that the only claim Oakes did not release is "the bad faith claim set forth in Count II of the Complaint," and Count II did not contain a UIM bad faith claim; and (2) as Oakes' UIM claim was dismissed with prejudice, any bad faith claims relating to UIM are barred by *res judicata*.

### A. Settlement Agreement

#### 1. The parties' positions

The parties' dispute over the effect of the Settlement Agreement is not a disagreement concerning the language of the Agreement, but over the language of the Original Complaint.  The portion of Settlement Agreement pertaining to the terms of the Agreement states:

> Defendant Allstate agrees to pay Plaintiff $205,000.  Plaintiff agrees to dismiss with prejudice the underinsured motorist claim, and to dismiss the PIP/ARB and Medpay claims without prejudice.  The only claim remaining against the Defendant Allstate is the *bad faith claim set forth in Count II* of the Complaint. (emphasis added).

Allstate argues this language is unambiguous, and that Oakes released all claims against Allstate with the only exception being the claims "asserted" in Count II of the Original Complaint.  Allstate argues that Oakes did not "assert" a UIM bad faith claim in Count II of the

6

Original Complaint, and he cannot now "assert" such a claim because it has been released.

In response, Oakes emphasizes the use of "set forth" in the Settlement Agreement. He argues that he "set forth" all of his bad faith claims in paragraphs seven and eight of Count II, and his bad faith claim, as it related to the handling of his UIM claim, was incorporated into Count III. Count III of the Original Complaint asserted Oakes' UIM claim under KRS 304.39-320, which was dismissed with prejudice by the Settlement Agreement. Oakes argues that his Count II bad faith claim was "clearly re-alleged" in Count III because as the Complaint was originally filed in McCracken County, he followed Kentucky Civil Rule 10.03 in drafting his complaint. CR 10.03 reads:

> Statements in pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

Oakes argues that his Count II bad faith claims, as "set forth" in paragraphs seven and eight, were incorporated into paragraph one of Count III which reads:

> That he adopts and re-alleges each and every allegation contained in the preceding Counts of the Complaint as if fully set forth herein and alleges against this defendant.

Oakes argues that the Settlement Agreement only mentions Count II as the "bad faith claims' origin in the complaint for ease of reference." Thus, Oakes concludes, the bad faith claims arising out of Allstate's conduct involving the UIM claim are not new claims barred by the Settlement Agreement because they were properly incorporated into Count III of the original complaint. Oakes argues that the Settlement Agreement only mentions Count II because that count was the origin of his bad faith claims, but not their exclusive location.

In reply, Allstate argues that Oakes' "construction of the original Complaint does no more that suggest that a UIM claim was tacit in Count III, when the Settlement Agreement

7

clearly states that the only remaining claim "is the bad faith claim set forth in Count II." Allstate does not give the "set forth" language the meaning attributed to it by Oakes. Further, Allstate argues that the original Complaint simply did not assert a UIM bad faith claim in any capacity, because if it had, Oakes would not have sought leave to amend his complaint to *add* a UIM bad faith claim. Finally, Allstate argues that the Settlement Agreement did not expressly mention the release of a UIM bad faith claim contained in Count III because such a claim had not been asserted. If a UIM bad faith claim had been asserted, it would have been included. According to Allstate, the only bad faith claims Oakes alleged were contained in Count II; thus, those were the only claims not settled because the bad faith claims had been bifurcated from the underlying claims, and as noted above, the Count II bad faith claims under the UCSPA must be dismissed.

### 2. The Court's conclusion

The Court finds that neither the Original Complaint nor the Settlement Agreement are pictures of clarity. Particularly, the complaint is at least ambiguous, and is certainly broadly drawn.

Kentucky is a notice pleading state. The Court's interpretation of the pleadings is tempered by that general pleading concept and the numerous telephone conferences the Court had with counsel. It is the Court's practice to have telephonic status and scheduling conferences with the parties in every case. These conferences deal with scheduling issues and the possibility of settlement. Firm scheduling dates and any substantive rulings are then reduced to a written order.

This practice has worked well for the bar, the Court, and the public. By utilizing the telephone conferences, the parties are saved the needless expense of travel and waiting

This is beneficial to both clients and lawyers. The Court has found that such telephone conferences also produce much candor and agreement.

In these conferences, the Court frequently asks the parties about the status of settlement negotiations, and whether referral to a magistrate judge may be helpful. All of these discussions occurred in this case.

At the beginning of this case, the parties agreed that the bad faith claim should be bifurcated from the contract issues involving no-fault reparations benefits and UIM coverage. Although the Court cannot remember the exact conversation it had with the parties, the Court believes the parties understood or at least assumed that the Plaintiff had asserted bad faith claims on both the no-fault reparations benefits and UIM claims.

The Court has reviewed the Original Complaint and determined that it should have been drafted with greater clarity. Count II initially sets forth the Plaintiff's claims for no-fault reparations benefits, but also makes broad assertions about bad faith in paragraphs seven and eight. Paragraphs seven and eight read:

> 7. That Plaintiff has given adequate proof of his lost time from work, and lost earnings, but Allstate has refused to pay the appropriate amounts due under the policy.
>
> 8. That Plaintiff has given adequate proof of his medical expenses, but payments have been delayed or denied without cause.

Those assertions are incorporated by reference in Count III, which deals with the Plaintiff's UIM claims. The claims are broad enough to place the Defendant on notice that the Plaintiff was also asserting a bad faith action in regard to the UIM claim.

The Settlement Agreement executed by the Plaintiff states:

> The only claim remaining against the Defendant Allstate is the bad faith claim set forth in Count II of the Complaint.

9

At the least, the broad, all-encompassing language of paragraphs seven and eight in Count II are ambiguous enough to put the Defendant on notice of the UIM bad faith claim.

Thus, the Court finds that Count III of the Original Complaint did incorporate all the provisions of Count II. While the complaint is not drafted with the level of clarity this Court generally expects, the Court believes the understanding and intent of the parties in the Settlement Agreement was to dismiss all claims except the bad faith no-fault and UIM bad faith claims. The Court finds that the complaint placed the Defendant on notice that the Plaintiff was asserting a UIM bad faith claim. The court further finds, from its conversations with counsel at that time, that the parties understood that the Plaintiff was asserting that UIM claim and the Plaintiff did not intend to release the claim in the Settlement Agreement.

Therefore, as the Court has previously determined that the Plaintiff's bad faith claims under the UCSPA must be dismissed, the only claim remaining is the Plaintiff's bad faith UIM claim.

## B. Res Judicata

Allstate also argues that because Oakes' UIM claim was dismissed with prejudice in the Settlement Agreement, any bad faith UIM claims constitute new actions barred by res judicata because they are based on the same conduct at issue in the dismissed UIM claim. However, as the Court has determined that Oakes did assert a UIM bad faith claim in his Original Complaint and that claim survived the Settlement Agreement, there is no need to consider the application of res judicata.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Judgment on the Pleadings or for

Summary Judgment is **GRANTED in part** and **DENIED in part**.

    An appropriate order shall issue.